UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION
_____

MICHAEL D. MCKERCHIE,

          Plaintiff,

v.

                                          Case No. 1:23-cv-1195

SCOTT WRIGGLESWORTH, et al.,         Hon. Hala Y. Jarbou

          Defendants.
_____/

## **OPINION**

This is a civil rights action brought by a state prisoner under 42 U.S.C. § 1983 regarding events that occurred while he was a county detainee. The Court has granted Plaintiff leave to proceed *in forma pauperis* in a separate order.

Under Rule 21 of the Federal Rules of Civil Procedure, a court may at any time, with or without motion, add or drop a party for misjoinder or nonjoinder. Fed. R. Civ. P. 21. Applying this standard regarding joinder, the Court will drop as misjoined all named Defendants *except* Defendants Doerr and Everidge. As set forth herein, rather than dismiss the misjoined Defendants, the Court will sever Plaintiff's claims against the misjoined Defendants and open a new case for the claims against them.

Further, under the Prison Litigation Reform Act, Pub. L. No. 104-134, 110 Stat. 1321 (1996) (PLRA), the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v.*

*Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying these standards, the Court will dismiss Plaintiff's official capacity claims and First Amendment retaliation claims against remaining Defendants Doerr and Everidge. Plaintiff's excessive force claims against Defendants Doerr and Everidge in their individual capacities will remain in the case.

## Discussion

### I. Factual Allegations

Plaintiff is presently incarcerated with the Michigan Department of Corrections at the Marquette Branch Prison in Marquette, Marquette County, Michigan. The events about which he complains, however, occurred while Plaintiff was incarcerated at the Ingham County Jail (ICJ) in Mason, Michigan. Plaintiff sues the following Ingham County Sheriff's Office personnel in their individual and official capacities: Sheriff Scott Wrigglesworth; Undersheriff Andrew Bouck; Chief Deputy Darin Southworth; Captain Robert Earle; Lieutenants Kevin Jewell, Melissa Brown, and Tom Agueros; Sergeants Jason Buckner, Jennifer Urban, Randy Gayton, and Brandon Doerr; Detective Chance Everidge; Deputies Carli Reid, Ryan Watts, Todd Cantine, Ryan Druery, Ben DeRosa, Zachary Rosenberry, Mackenzie Greer, Kay Vanells, Unknown Douse, Unknown Powell, Unknown Klisch, and Unknown Kiger. (Compl., ECF No. 1, PageID.2, 5–10.)

In Plaintiff's complaint, he alleges that after he escaped from ICJ, he "was assaulted by" Defendants Doerr and Everidge on November 21, 2020.[1] (*Id.*, PageID.3, 11.) Plaintiff contends that "[h]andcuffs and shackles were aggressively placed on [him] by these two individuals cutting blood circulation off in both [of his] wrists and ankles." (*Id.*, PageID.11.) Plaintiff explains that he

---

[1] In this opinion, the Court corrects the punctuation in quotations from Plaintiff's complaint.

2

"was already restrained and secured in the back of . . . [a] police cruiser when these two decided to assault [him]." (*Id.*) Plaintiff claims that Defendant Everidge "stated [Plaintiff] was going to wish [he had] never escaped." (*Id.*)

Subsequently, later that same day, at ICJ, Plaintiff "was ordered by" Defendant Wrigglesworth to be held in an observation cell "with nothing but a self deterrent gown." (*Id.*, PageID.12.) Plaintiff states that he was not provided with "hygiene," a mattress, or a blanket. (*Id.*) Plaintiff was held in this cell "for several days until [his] sanity started to deteriorate." (*Id.*) Plaintiff "developed bed sore[s] (bruises) and back pain." (*Id.*) Defendants Southworth and Buckner "were tasked with implementing a plan to enforce this treatment," and Defendants Brown, Jewell, Greer, Gayton, Cantine, Vanells, Watts, Reid, Klisch, Kiger, and Powell "participated in enforcing this treatment." (*Id.*)

From November 21, 2020, to April 4, 2021, Plaintiff was housed "in a cell with no window and a 24/7 daytime illuminating light." (*Id.*, PageID.13.) During recreation, Plaintiff had to "wear full body restraints." (*Id.*) Plaintiff states that this was Defendants Southworth and Buckner's "plan," and Defendants Earle, Brown, Jewell, Agueros, Urban, Gayton, Greer, Cantine, Reid, Watts, Klisch, Kiger, Powell, and Douse "enforced this treatment." (*Id.*)

On February 1, 2021, Defendant Buckner told Plaintiff that his "right to communicate with the outside world was being stripped." (*Id.*, PageID.14.) The next day, February 2, 2021, Plaintiff was placed in a restraint chair. (*Id.*, PageID.15.) Defendant Reid performed the "first circulation check," and she tightened the straps on Plaintiff's wrists, stating "I hope your [sic] more comfortable." (*Id.*) Defendant Reid "refused to contact command or loosen the straps," and she taunted Plaintiff as his "hands turned bluish purple and [he] lost all feeling in them." (*Id.*) After more than three hours, Plaintiff "begged [Defendant Reid] to contact command and she stated, 'oh

3

don't worry you still got some time left.'" (*Id.*) "Command did not respond until [Plaintiff] spit on [Defendant] Reid." (*Id.*)

On February 5, 2021, "a visit was scheduled by the Ingham County Sheriff between [Plaintiff] and [his] Ingham County Public Defenders." (*Id.*, PageID.14.) Subsequently, on February 17, 2021, a non-party sergeant told Plaintiff that he "was being held incommunicado for the letter [Plaintiff] wrote the Lansing State Journal and it had just reached the front page of the paper." (*Id.*) Defendant Jewell told Plaintiff that he had "given the sheriff a black eye (in the media) and should have expected punches in return." (*Id.*) Plaintiff believes that Defendant Jewell was referring to Plaintiff's "treatment and incommunicado status." (*Id.*) Plaintiff states that he was also unable to "write kites or grievances." (*Id.*)

From February 5, 2021, to February 26, 2021, Plaintiff did not have "regular access to drinking water." (*Id.*, PageID.16.) Plaintiff "became dehydrated" and had "severe stomach aches and nausea." (*Id.*) On February 26, 2021, Plaintiff "pleaded" with Defendants Bouck and Jewell "for help while being placed in a restraint suit;" the restraint suit "was immediately removed." (*Id.*) Plaintiff states that Defendants Reid, Watts, Cantine, Rosenberry, Klisch, Douse, and Greer were the deputies who "withheld water." (*Id.*, PageID.16–17.) During this period of time, Defendant Reid "withheld food" from Plaintiff three times and Defendant Watts withheld food once. (*Id.*, PageID.17.)

Additionally, between February 19, 2021, and March 1, 2021, Plaintiff "was held in a pitch black cell 24/7 in response to breaking the light." (*Id.*) Plaintiff states that he "became very depressed." (*Id.*) Plaintiff claims that he was "forced to live in an extremely bright cell or a pitch black one," and Defendant Southworth told Plaintiff that "it would teach [Plaintiff] a lesson." (*Id.*)

4

Subsequently, on September 1, 2021, Defendants Agueros and Urban placed Plaintiff "in a restraint suit tightening the straps viciously to cut off circulation to [Plaintiff's] limbs and to compress [his] chest." (*Id.*, PageID.18.) A non-party deputy conducted the first circulation check, and the deputy contacted a non-party nurse. (*Id.*) The non-party nurse demanded that Plaintiff be removed from the restraint suit, stating "you've [sic] could have killed him." (*Id.*) Plaintiff states that the "pain was excruciating." (*Id.*)

During his incarceration at ICJ, Plaintiff was "refused the COVID-19 vaccine." (*Id.*, PageID.19.) Plaintiff claims that Defendant Buckner told Plaintiff "they were withholding the vaccine as an incentive for [Plaintiff] to plead guilty to [his] charges and make [himself] available for transfer." (*Id.*) Plaintiff claims that Defendant Buckner also told Plaintiff that he "would receive better treatment when [he] got to prison and [he] needed to give up on [his] defense." (*Id.*)

Additionally, Plaintiff believes that the Ingham County Sheriff's Office improperly asserted itself in his pending criminal cases. (*See id.*, PageID.20–23.) Plaintiff also believes that all of the above-discussed actions occurred "in retaliation" for "[his] escape." (*Id.*, PageID.3.) As relief, Plaintiff seeks compensatory and punitive damages, as well as injunctive relief. (*Id.*, PageID.4.)

## II. Misjoinder

### A. Joinder

Federal Rule of Civil Procedure 20(a) limits the joinder of parties in a single lawsuit, whereas Federal Rule of Civil Procedure 18(a) limits the joinder of claims. Rule 20(a)(2) governs when multiple defendants may be joined in one action:

> [p]ersons . . . may be joined in one action as defendants if: (A) any right to relief is asserted against them jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences; and (B) any question of law or fact common to all defendants will arise in the action."

5

Fed. R. Civ. P. 20(a)(2). Rule 18(a) states: "A party asserting a claim . . . may join, as independent or alternative claims, as many claims as it has against an opposing party." Fed. R. Civ. P. 18(a).

Courts have recognized that, where multiple parties are named, as in this case, the analysis under Rule 20 precedes that under Rule 18:

> Rule 20 deals solely with joinder of parties and becomes relevant only when there is more than one party on one or both sides of the action. It is not concerned with joinder of claims, which is governed by Rule 18. Therefore, in actions involving multiple defendants Rule 20 operates independently of Rule 18. . . .
>
> Despite the broad language of Rule 18(a), plaintiff may join multiple defendants in a single action only if plaintiff asserts at least one claim to relief against each of them that arises out of the same transaction or occurrence and presents questions of law or fact common to all.

7 Charles Allen Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1655 (3d ed. 2001), *quoted in Proctor v. Applegate*, 661 F. Supp. 2d 743, 778 (E.D. Mich. 2009), *and Garcia v. Munoz*, No. 08-1648, 2008 WL 2064476, at *3 (D.N.J. May 14, 2008); *see also United States v. Mississippi*, 380 U.S. 128, 142–43 (1965) (discussing that joinder of defendants is permitted by Rule 20 if both commonality and same transaction requirements are satisfied).

Therefore, "a civil plaintiff may not name more than one defendant in his original or amended complaint unless one claim against each additional defendant is transactionally related to the claim against the first defendant and involves a common question of law or fact." *Proctor*, 661 F. Supp. 2d at 778 (internal quotation marks omitted). When determining if civil rights claims arise from the same transaction or occurrence, a court may consider a variety of factors, including, "the time period during which the alleged acts occurred; whether the acts . . . are related; whether more than one act . . . is alleged; whether the same supervisors were involved, and whether the defendants were at different geographical locations." *Id.* (citation omitted).

Permitting improper joinder in a prisoner civil rights action also undermines the purpose of the PLRA, which was to reduce the large number of frivolous prisoner lawsuits that were being

filed in the federal courts. *See Riley v. Kurtz*, 361 F.3d 906, 917 (6th Cir. 2004). The Seventh Circuit has explained that a prisoner like plaintiff may not join in one complaint all of the defendants against whom he may have a claim, unless the prisoner satisfies the dual requirements of Rule 20(a)(2):

> Thus multiple claims against a single party are fine, but Claim A against Defendant 1 should not be joined with unrelated Claim B against Defendant 2. Unrelated claims against different defendants belong in different suits, not only to prevent the sort of morass that [a multi]-claim, [multi]-defendant suit produce[s] but also to ensure that prisoners pay the required filing fees—for the Prison Litigation Reform Act limits to 3 the number of frivolous suits or appeals that any prisoner may file without prepayment of the required fees. 28 U.S.C. § 1915(g) . . . .
>
> A buckshot complaint that would be rejected if filed by a free person—say, a suit complaining that A defrauded the plaintiff, B defamed him, C punched him, D failed to pay a debt, and E infringed his copyright, all in different transactions—should be rejected if filed by a prisoner.

*George v. Smith*, 507 F.3d 605, 607 (7th Cir. 2007); *see also Brown v. Blaine*, 185 F. App'x 166, 168–69 (3d Cir. 2006) (allowing an inmate to assert unrelated claims against new defendants based on actions taken after the filing of his original complaint would have defeated the purpose of the three strikes provision of PLRA).

Under these circumstances, to allow Plaintiff to proceed with improperly joined claims and Defendants in a single action would permit him to circumvent the PLRA's filing fee provisions and allow him to avoid having to incur a "strike" for purposes of § 1915(g), should any of his claims be dismissed as frivolous or for failure to state a claim. Courts are therefore obligated to reject misjoined claims like Plaintiff's. *See Owens v. Hinsley*, 635 F.3d 950, 952 (7th Cir. 2011).

Here, looking at the timeline of events in Plaintiff's complaint, Plaintiff's allegations against Defendants Doerr and Everidge are the earliest allegations in the complaint.[2] (*See* Compl., ECF No. 1, PageID.11.) Specifically, Plaintiff alleges that on November 21, 2020, he "was assaulted by" Defendants Doerr and Everidge. (*Id.*) Plaintiff explains that he "was already restrained and secured in the back of . . . [a] police cruiser when these two decided to assault [him]." (*Id.*)

Plaintiff's allegations against Defendants Doerr and Everidge are transactionally related; however, as explained below, Plaintiff's allegations against Defendants Doerr and Everidge are transactionally *unrelated* to Plaintiff's allegations against the remaining twenty-two Defendants. Specifically, Plaintiff's allegations against the remaining twenty-two Defendants involve events that occurred during Plaintiff's detention at ICJ. In contrast, Plaintiff's allegations against Defendants Doerr and Everidge involve an incident that occurred when he was re-arrested following his escape from ICJ.[3] Plaintiff believes that all of the events described in the complaint occurred "in retaliation" for "[his] escape." (*Id.*, PageID.3.) However, Plaintiff's belief that every event that occurred after his escape from ICJ occurred solely because of his escape does not transform separate, subsequent events into events that arise out of the same transaction or occurrence. After all, in the prison context, any adverse incident experienced by a prisoner could be claimed to be retaliation for some prior incident; however, such incidents are not necessarily transactionally related.

---

[2] The analysis of joinder must start somewhere. By accepting the earliest factual allegations as the foundation for the joinder analysis, the Court is considering the issue of joinder of parties as Plaintiff has presented it in his complaint.

[3] Although not specifically addressed in Plaintiff's complaint, based on Plaintiff's factual allegations, it appears that he was incarcerated at ICJ, and that at some point, he escaped from ICJ. Subsequently, it appears that Plaintiff was re-arrested and returned to ICJ.

Here, the events with the remaining twenty-two Defendants, which occurred during Plaintiff's detention at ICJ, are not transactionally related to Plaintiff's allegations against Defendants Doerr and Everidge, which involve events that occurred during Plaintiff's re-arrest. Accordingly, the Court concludes that Defendants Doerr and Everidge are properly joined because Plaintiff's claims against these Defendants arise out of the same transaction and occurrence. However, Plaintiff has improperly joined the remaining twenty-two Defendants.

### B.     Remedy

Because the Court has concluded that Plaintiff has improperly joined twenty-two Defendants to this action, the Court must determine an appropriate remedy. Under Rule 21 of the Federal Rules of Civil Procedure, "[m]isjoinder of parties is not a ground for dismissing an action." Fed. Civ. P. R. 21. Instead, Rule 21 provides two remedial options: (1) misjoined parties may be dropped on such terms as are just; or (2) any claims against misjoined parties may be severed and proceeded with separately. *See Grupo Dataflux v. Atlas Glob. Grp., L.P.*, 541 U.S. 567, 572–73 (2004) ("By now, 'it is well settled that Rule 21 invests district courts with authority to allow a dispensable nondiverse party to be dropped at any time . . . .'" (citation omitted)); *DirecTV, Inc. v. Leto*, 467 F.3d 842, 845 (3d Cir. 2006); *see also Michaels Bldg. Co. v. Ameritrust Co., N.A.*, 848 F.2d 674, 682 (6th Cir. 1988) ("[D]ismissal of claims against misjoined parties is appropriate."). "Because a district court's decision to remedy misjoinder by dropping and dismissing a party, rather than severing the relevant claim, may have important and potentially adverse statute-of-limitations consequences, the discretion delegated to the trial judge to dismiss under Rule 21 is restricted to what is 'just.'" *DirecTV*, 467 F.3d at 845.

At least three judicial circuits have interpreted "on such terms as are just" to mean without "gratuitous harm to the parties." *Strandlund v. Hawley*, 532 F.3d 741, 745 (8th Cir. 2008) (quoting *Elmore v. Henderson*, 227 F.3d 1009, 1012 (7th Cir. 2000)); *see also DirecTV*, 467 F.3d at 845.

9

Such gratuitous harm exists if the dismissed parties lose the ability to prosecute an otherwise timely claim, such as where the applicable statute of limitations has lapsed, or the dismissal is with prejudice. *Strandlund*, 532 F.3d at 746; *DirecTV*, 467 F.3d at 846–47.

Plaintiff brings this action under 42 U.S.C. § 1983. For civil rights suits filed in Michigan under § 1983, the statute of limitations is three years. *See* Mich. Comp. Laws § 600.5805(2); *Carroll v. Wilkerson*, 782 F.2d 44 (6th Cir. 1986) (per curiam); *Stafford v. Vaughn*, No. 97-2239, 1999 WL 96990, at *1 (6th Cir. Feb. 2, 1999). The statute of limitations begins to run when the aggrieved party knows or has reason to know of the injury that is the basis of his action. *Collyer v. Darling*, 98 F.3d 211, 220 (6th Cir. 1996). Here, some of the misjoined claims involve events that occurred starting in late November of 2020. In light of this, rather than dismiss the misjoined Defendants, the Court will direct the Clerk to sever the claims against Defendants Wrigglesworth, Bouck, Southworth, Earle, Jewell, Brown, Agueros, Buckner, Urban, Gaytan, Reid, Watts, Cantine, Druery, DeRosa, Rosenbery, Greer, Vanells, Douse, Powell, Klisch, and Kiger into a new, separate action. The Clerk shall open a new case for the claims against these twenty-two Defendants, and the pleadings filed to date in the instant case shall appear in the docket of the new case. The Western District of Michigan has several rules designed to have related or cognate cases assigned to a single judge. *See* W.D. Mich. LCivR. 3.3.1(d), 3.3.2. Assigning related or cognate cases promotes judicial economy. The present case and the new case that will result from the severance of Plaintiff's claims shall be related cases under the Local Rules.

Although the Court will sever Plaintiff's claims against the above-listed twenty-two Defendants into one new case, the Court does not conclude that all of Plaintiff's claims against these twenty-two Defendants are properly joined. Instead, based on the Court's review of Plaintiff's complaint in this action, it appears that many of Plaintiff's claims against these twenty-

two Defendants are transactionally unrelated and are themselves improperly joined. The Court will allow Plaintiff an opportunity to remedy the misjoinder issue in the new action by filing an amended complaint. Plaintiff must file his amended complaint in the new action within 28 days. The Court will direct the Clerk to send the Court's approved form complaint to Plaintiff. Failure to timely file an amended complaint on the approved Court form may result in dismissal of the action. *See* Fed. R. Civ. P. 41(b). Plaintiff is advised that his amended complaint must comply with the rules regarding joinder. Simply because separate and discrete events occurred during Plaintiff's detention at ICJ does mean that they are all properly joined simply because they occurred at ICJ. Plaintiff is cautioned that he must limit his amended complaint in the new action to Defendants and claims that are transactionally related to one another. The Court may, in its discretion and without further warning, dismiss any future complaint, or part thereof, filed by Plaintiff that contains claims that are misjoined.

As to remaining Defendants Doerr and Everidge, the Court will review Plaintiff's claims against Defendants Doerr and Everidge as required by the PLRA.

### III.    Failure to State a Claim

A complaint may be dismissed for failure to state a claim if it fails "to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Id.*; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the

11

defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 679. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* at 678 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—that the pleader is entitled to relief." *Id.* at 679 (quoting Fed. R. Civ. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470–71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(ii)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

In this action, the Court construes Plaintiff's complaint to raise First Amendment retaliation claims and excessive force claims against Defendants Doerr and Everidge.

### A.     Official Capacity Claims

Plaintiff indicates that he is suing Defendants Doerr and Everidge in both their official and individual capacities. (Compl., ECF No. 1, PageID.7.) Official capacity lawsuits "generally represent only another way of pleading an action against an entity of which an officer is an agent." *Kentucky v. Graham*, 473 U.S. 159, 165 (1985) (citing *Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. 658, 690 n. 55 (1978)). An official capacity suit is to be treated as a suit against the entity itself. *Id.* at 166 (citing *Brandon v. Holt*, 469 U.S. 464, 471–72 (1985)); *see also Matthew*

12

*v. Jones*, 35 F.3d 1046, 1049 (6th Cir. 1994). "Individuals sued in their official capacities stand in the shoes of the entity they represent," and the suit is not against the official personally. *See Alkire v. Irving*, 330 F.3d 802, 810 (6th Cir. 2003); *see also Graham*, 473 U.S. at 165–66.

Here, Plaintiff's suit against Defendants Doerr and Everidge—both of whom work for the Ingham County Sheriff's Office—in their official capacities necessarily intends to impose liability on the county. Ingham County, however, may not be held vicariously liable for the actions of its employees under § 1983. *See Connick v. Thompson*, 563 U.S. 51, 60 (2011); *City of Canton v. Harris*, 489 U.S. 378, 392 (1989); *Monell*, 436 U.S. at 694. Instead, a county is liable only when its official policy or custom causes the injury. *Connick*, 563 U.S. at 60. This policy or custom must be the moving force behind the alleged constitutional injury, and the plaintiff must identify the policy or custom, connect it to the governmental entity, and show that his injury was incurred because of the policy or custom. *See Turner v. City of Taylor*, 412 F.3d 629, 639 (6th Cir. 2005); *Alkire*, 330 F.3d at 815 (6th Cir. 2003). "Governmental entities cannot be held responsible for a constitutional deprivation unless there is a direct causal link between a municipal policy or custom and the alleged violation of constitutional rights." *Watson v. Gill*, 40 F. App'x 88, 89 (6th Cir. 2002) (citing *Monell*, 436 U.S. at 692).

A policy includes a "policy statement, ordinance, regulation, or decision officially adopted and promulgated" by the sheriff's department. *See Monell*, 436 U.S. at 690. The United States Court of Appeals for the Sixth Circuit has explained that a custom "for the purposes of *Monell* liability must be so permanent and well settled as to constitute a custom or usage with the force of law." *Doe v. Claiborne Cnty.*, 103 F.3d 495, 507 (6th Cir. 1996). "In short, a 'custom' is a 'legal institution' not memorialized by written law." *Id.*

Here, Plaintiff fails to allege the existence of a custom or policy, let alone that any policy or custom was the moving force behind his alleged constitutional injuries. *Cf. Rayford v. City of Toledo*, No. 86-3260, 1987 WL 36283, at *1 (6th Cir. Feb. 2, 1987); *see also Bilder v. City of Akron*, No. 92-4310, 1993 WL 394595, at *2 (6th Cir. Oct. 6, 1993) (affirming dismissal of § 1983 action when plaintiff allegation of policy or custom was conclusory, and plaintiff failed to allege facts tending to support the allegation). Accordingly, because Plaintiff fails to allege the existence of a policy or custom, the Court will dismiss Plaintiff's official capacity claims against Defendants Doerr and Everidge.

### B.    First Amendment Retaliation Claims

The Court construes Plaintiff's complaint to raise a First Amendment retaliation claim against Defendants Doerr and Everidge. (*See* Compl., ECF No. 1, PageID.3 (suggesting that Defendants' actions were "in retaliation" for "[Plaintiff's] escape").)

Retaliation based upon a prisoner's exercise of his or her constitutional rights violates the Constitution. *See Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999) (en banc). In order to set forth a First Amendment retaliation claim, a plaintiff must establish three elements: (1) he was engaged in protected conduct; (2) an adverse action was taken against him that would deter a person of ordinary firmness from engaging in that conduct; and (3) the adverse action was motivated, at least in part, by the protected conduct. *Id.* Moreover, a plaintiff must be able to show that the exercise of the protected right was a substantial or motivating factor in the defendant's alleged retaliatory conduct. *See Smith v. Campbell*, 250 F.3d 1032, 1037 (6th Cir. 2001) (citing *Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977)).

Here, Plaintiff's First Amendment retaliation claim fails at the first step. Plaintiff alleges that Defendants Doerr and Everidge retaliated against him because of Plaintiff's "escape." (Compl., ECF No. 1, PageID.3.) It appears that Plaintiff is referring to his escape from ICJ. *See*

14

*supra* note 3. However, Plaintiff's escape from detention at ICJ is not protected conduct because, at a minimum, escaping from jail violates jail regulations and may itself constitute a crime. "[I]f a prisoner violates a legitimate prison regulation, he is not engaged in 'protected conduct.'" *Thaddeus-X*, 175 F.3d at 395. Because Plaintiff has failed to allege protected conduct, he has failed to state a First Amendment retaliation claim against Defendants Doerr and Everidge.

Moreover, even if Plaintiff alleged that he engaged in protected conduct, his allegations would still be insufficient. Plaintiff merely alleges the ultimate fact of retaliation in this action, but he fails to allege sufficient factual allegations to support his claim. *See Murphy v. Lane*, 833 F.2d 106, 108 (7th Cir. 1987) ("[A]lleging merely the ultimate fact of retaliation is insufficient."). Accordingly, for these reasons, Plaintiff's First Amendment retaliation claims against Defendants Doerr and Everidge will be dismissed.

### C. Excessive Force Claims

The Court also construes Plaintiff's complaint to raise excessive force claims against Defendants Doerr and Everidge. (*See* Compl., ECF No. 1, PageID.11.)

Claims of excessive force are governed by the provisions of the Fourth, Eighth, and Fourteenth Amendments, depending upon where in the criminal process the use of force occurs. For convicted prisoners, the Eighth Amendment's ban on cruel and unusual punishment governs the use of excessive force. *See Wilkins v. Gaddy*, 559 U.S. 34, 37–39 (2010). For pretrial detainees, the protection against the use of excessive force is afforded by the Fourteenth Amendment's Due Process Clause. *See Kingsley v. Hendrickson*, 576 U.S. 389, 392–93 (2015); *see also Westmoreland v. Butler Cnty., Ky.*, 29 F.4th 721, 727 (6th Cir. 2022), *reh'g en banc denied*, 35 F.4th 1051 (6th Cir. 2022). Finally, the Fourth Amendment protects against the use of excessive force against someone "in the course of an arrest, investigatory stop, or other 'seizure.'" *Graham v. Connor*, 490 U.S. 386, 395 (1989). Fourth Amendment protections apply for "one who has been

arrested but has not yet received a judicial determination of probable cause, either through an arrest warrant or a post-arrest probable cause hearing." *Colson v. City of Alcoa, Tenn.*, 37 F.4th 1182, 1187 (6th Cir. 2022) (citing *Aldini v. Johnson*, 609 F.3d 858, 866 (6th Cir. 2010)).

Here, it appears that Plaintiff was a pretrial detainee at the time of the incident with Defendants Doerr and Everidge. However, regardless of which constitutional provision applies, although Plaintiff has by no means proven his claim, at this stage of the proceedings the Court will not dismiss Plaintiff's excessive force claims against Defendants Doerr and Everidge.

## Conclusion

As set forth above, the Court will drop as misjoined all named Defendants *except* Defendants Doerr and Everidge. The Court will sever Plaintiff's claims against the misjoined Defendants and will direct the Clerk to open a new case for the claims against these Defendants. The present case and the new case that will result from the severance of Plaintiff's claims will be related cases under the Local Rules. In the newly opened action, Plaintiff will be directed to file an amended complaint on the form complaint within 28 days.

Further, having conducted the review required by the PLRA, the Court determines that Plaintiff's official capacity claims and First Amendment retaliation claims against remaining Defendants Doerr and Everidge will be dismissed for failure to state a claim under 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c). Plaintiff's excessive force claims against Defendants Doerr and Everidge in their individual capacities will remain in the case. The Court will serve the complaint against Defendants Doerr and Everidge.

An order consistent with this opinion will be entered.

Dated: December 15, 2023         /s/ Hala Y. Jarbou
                                 HALA Y. JARBOU
                                 CHIEF UNITED STATES DISTRICT JUDGE