UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION
_____

MICHAEL D. MCKERCHIE,

                Plaintiff,

                                    Case No. 1:23-cv-1319

v.

                                      Hon. Hala Y. Jarbou

SCOTT WRIGGLESWORTH, et al.,

                Defendants.

_____/

**<u>OPINION</u>**

      This is a civil rights action brought by a state prisoner under 42 U.S.C. § 1983 regarding events that occurred while he was a county detainee. The Court has granted Plaintiff leave to proceed *in forma pauperis* in a separate order. Under the Prison Litigation Reform Act, Pub. L. No. 104-134, 110 Stat. 1321 (1996) (PLRA), the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying these standards, the Court will dismiss Plaintiff's amended complaint for failure to state a claim against Defendants Wrigglesworth, Bouck, Southworth, Earle, Jewell, Brown, Buckner, Gaytan, Watts, Cantine, Druery, Rosenberry, Greer, Vanells, Douse, Powell, Klish, and Kiger. The Court will also dismiss, for failure to state a claim, all of Plaintiff's claims against remaining Defendant Reid *except* for Plaintiff's Fourteenth Amendment

claim regarding Reid's involvement with Plaintiff's confinement in a restraint chair on February 2, 2021. Plaintiff's Fourteenth Amendment claim against Defendant Reid regarding Reid's involvement with Plaintiff's confinement in a restraint chair on February 2, 2021, will remain in the case.

## Discussion

### I.    Factual Allegations

Plaintiff is presently incarcerated with the Michigan Department of Corrections (MDOC) at the Marquette Branch Prison (MBP) in Marquette, Marquette County, Michigan. The events about which he complains, however, occurred while Plaintiff was incarcerated at the Ingham County Jail (ICJ) in Mason, Michigan. Plaintiff sues the following Ingham County Sheriff's Office personnel: Sheriff Scott Wrigglesworth; Undersheriff Andrew Bouck; Chief Deputy Darin Southworth; Captain Robert Earle; Lieutenants Kevin Jewell and Melissa Brown; Sergeants Jason Buckner and Rudy Gaytan; and Deputies Carli Reid, Ryan Watts, Todd Cantine, Ryan Druery, Zachary Rosenberry, Mackenzie Greer, Kay Vanells, Unknown Douse, Unknown Powell, Unknown Klish,[1] and Unknown Kiger. (Am. Compl., ECF No. 8, PageID.54, 55.) Plaintiff sues Defendants Wrigglesworth, Bouck, and Southworth in their individual and official capacities. (*Id.*, PageID.55.) Plaintiff sues the remaining Defendants in their individual capacities only. (*See id.*)

---

[1] Plaintiff refers to Defendant Klish as both "Klish" and "Klisch." In this opinion, the Court will refer to this Defendant as "Klish."

In Plaintiff's amended complaint,[2] he states that he returned to ICJ on November 21, 2020, "after being recaptured after escaping . . . [from ICJ]."[3] (*Id.*, PageID.55–56, ¶15.) Upon his return to ICJ, Plaintiff "was ordered by Defendant Wrigglesworth to be held in an observation cell with nothing but a self deterrent gown." (*Id.*, PageID.56.) Plaintiff states that he "was not provided with hygiene, a mattress or a blanket for several days." (*Id.* ¶ 16.)

Plaintiff claims that Defendants Southworth and Buckner were "put in charge of a plan to enforce the aforementioned inhumane treatment," and Defendants Brown, Jewell, Greer, Gaytan, Cantine, Vanells, Watts, Reid, Klis[]h, Kiger, and Powell "participated in enforcing this treatment." (*Id.* ¶ 17.)

"From November 21, 2020, to April 4, 2021, Plaintiff was housed in a cell with no window and a 24/7 daytime illuminating light." (*Id.* ¶ 18.)

Further, during an unspecified period of time, "Plaintiff had to wear full body restraints" during recreation. (*Id.* ¶ 19.) Plaintiff states that this was Defendants Southworth and Buckner's "plan," and Defendants Earle, Brown, Jewell, Gaytan, Greer, Cantine, Reid, Watts, Klish, Kiger, Powell, and Douse "enforced this inhumane treatment." (*Id.*)

"On February 1, 2021, Defendant Buckner told Plaintiff that his right to communicate with the outside world was being stripped." (*Id.* ¶ 20.) The next day, February 2, 2021, Plaintiff was placed in a restraint chair by Defendant Southworth. (*Id.* ¶ 21.) Defendant Reid performed the

---

[2] Plaintiff originally filed action no. 1:23-cv-1195 in this Court; however, the Court partially dismissed the complaint in that action due to misjoinder and for failure to state a claim. In action no. 1:23-cv-1195, the Court directed the Clerk to sever Plaintiff's claims against the misjoined Defendants and to open a new case for the claims against them. The present case is the case that was opened for Plaintiff's claims against the misjoined Defendants.

[3] The Court notes that Plaintiff's amended complaint appears, in large part, to be a word-for-word recitation of the Court's summary of Plaintiff's factual allegations, as set forth in the Court's opinion partially dismissing the complaint in action no. 1:23-cv-1195.

"first circulation check," and she "tightened the straps on Plaintiff's wrists," stating: "I hope you're more comfortable." (*Id.*) Defendant Reid "refused to contact command or loosen the straps despite [the fact that] Plaintiff's hand[s] had begun to turn bluish purple as he lost all feeling in them." (*Id.*) "After more than three hours, Plaintiff begged Defendant Reid to contact command and she stated, 'oh don't worry you still got some time left.'" (*Id.*) "Command did not respond until Plaintiff spit on Defendant Reid." (*Id.*)

On February 5, 2021, "a visit was scheduled by the Ingham County Sheriff between Plaintiff and his Ingham County Public Defenders," however, "[t]he visit was denied." (*Id.* ¶ 23.) "Subsequently, on February 17, 2021, a non-party sergeant told Plaintiff that he was being held incommunicado for the letter Plaintiff wrote the Lansing State Journal and it had just reached the front page of the paper." (*Id.*) "Defendant Jewell told Plaintiff that he had given the sheriff a black eye in the media and should have expected punches in return." (*Id.*) "Plaintiff believes that Defendant Jewell was referring to Plaintiff's treatment and incommunicado status." (*Id.*) Plaintiff was also unable to "write kites or grievances." (*Id.*)

"From February 5, 2021, to February 26, 2021, Plaintiff did not have regular access to drinking water." (*Id.* ¶ 24.) Plaintiff "became dehydrated and had severe stomach aches and nausea." (*Id.*) Plaintiff states that Defendants Reid, Watts, Cantine, Rosenberry, Klish, Douse, and Greer "were the deputies who withheld water." (*Id.* ¶ 25.) "During this period of time, Defendant Reid withheld food from Plaintiff three times and Defendant Watts withheld food once." (*Id.*) On February 26, 2021, Plaintiff "pleaded" with Defendants Bouck and Jewell "for help while being placed in a restraint suit;" the restraint suit "was immediately removed." (*Id.*)

Additionally, "between February 19, 2021, and March 1, 2021, Plaintiff was held in a pitch black cell 24/7 in response to breaking the light." (*Id.*, PageID.57, ¶ 26.) "Plaintiff states that he

became very depressed." (*Id.*) Plaintiff claims that "he was forced to live in an extremely bright cell or a pitch black one," and "Defendant Southworth told Plaintiff that it would teach Plaintiff a lesson." (*Id.*)

During his incarceration at ICJ, "Plaintiff was refused the COVID-19 vaccine." (*Id.* ¶ 27.) Plaintiff claims that "Defendant Buckner told Plaintiff they were withholding the vaccine as an incentive for Plaintiff to plead guilty to his charges and make himself available for transfer." (*Id.*) Plaintiff also claims that Defendant Buckner "told Plaintiff that he would receive better treatment when he got to prison and he needed to give up on his defense." (*Id.*)

Additionally, Plaintiff believes that "those [D]efendants employed by the Ingham County Sheriff's Office improperly asserted itself [sic] in his pending criminal cases." (*Id.* ¶ 28.) Plaintiff also believes that all Defendants retaliated against Plaintiff and "verbally and physical conspired against Plaintiff for . . . escaping [from ICJ]." (*Id.*)

Based on the foregoing allegations, Plaintiff avers that Defendants violated his First, Sixth, Eighth, and Fourteenth Amendment rights. (*Id.*, PageID.55, 57–58.) Additionally, the Court construes Plaintiff's amended complaint to raise a civil conspiracy claim under § 1983. (*See id.*, PageID.57 (stating that Defendants "verbally and physically conspired against Plaintiff for . . . escaping [from ICJ]").) As relief, Plaintiff seeks compensatory and punitive damages, as well as declaratory and injunctive relief. (*Id.*, PageID.59.)

## II.   Failure to State a Claim

A complaint may be dismissed for failure to state a claim if it fails "to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Id.*; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the

elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 679. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* at 678 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—that the pleader is entitled to relief." *Id.* at 679 (quoting Fed. R. Civ. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470–71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(ii)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

## III.    Official Capacity Claims

Plaintiff sues Defendants Wrigglesworth, Bouck, and Southworth in their individual and official capacities. (Am. Compl., ECF No. 8, PageID.55.) Plaintiff sues the remaining Defendants in their individual capacities only. (*See id.*)

Official capacity lawsuits "generally represent only another way of pleading an action against an entity of which an officer is an agent." *Kentucky v. Graham*, 473 U.S. 159, 165 (1985) (citing *Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. 658, 690 n. 55 (1978)). An official capacity suit is to be treated as a suit against the entity itself. *Id.* at 166 (citing *Brandon v. Holt*, 469 U.S. 464, 471–72 (1985)); *see also Matthew v. Jones*, 35 F.3d 1046, 1049 (6th Cir. 1994). "Individuals sued in their official capacities stand in the shoes of the entity they represent," and the suit is not against the official personally. *See Alkire v. Irving*, 330 F.3d 802, 810 (6th Cir. 2003); *see also Graham*, 473 U.S. at 165–66.

Here, Plaintiff's suit against Defendants Wrigglesworth, Bouck, and Southworth—all of whom work for the Ingham County Sheriff's Office—in their official capacities necessarily intends to impose liability on the county. Ingham County, however, may not be held vicariously liable for the actions of its employees under § 1983. *See Connick v. Thompson*, 563 U.S. 51, 60 (2011); *City of Canton v. Harris*, 489 U.S. 378, 392 (1989); *Monell*, 436 U.S. at 694. Instead, a county is liable only when its official policy or custom causes the injury. *Connick*, 563 U.S. at 60. This policy or custom must be the moving force behind the alleged constitutional injury, and the plaintiff must identify the policy or custom, connect it to the governmental entity, and show that his injury was incurred because of the policy or custom. *See Turner v. City of Taylor*, 412 F.3d 629, 639 (6th Cir. 2005); *Alkire*, 330 F.3d at 815 (6th Cir. 2003). "Governmental entities cannot be held responsible for a constitutional deprivation unless there is a direct causal link between a municipal policy or custom and the alleged violation of constitutional rights." *Watson v. Gill*, 40 F. App'x 88, 89 (6th Cir. 2002) (citing *Monell*, 436 U.S. at 692).

A policy includes a "policy statement, ordinance, regulation, or decision officially adopted and promulgated" by the sheriff's department. *See Monell*, 436 U.S. at 690. Moreover, the United

7

States Court of Appeals for the Sixth Circuit has explained that a custom "for the purposes of *Monell* liability must be so permanent and well settled as to constitute a custom or usage with the force of law." *Doe v. Claiborne Cnty.*, 103 F.3d 495, 507 (6th Cir. 1996). "In short, a 'custom' is a 'legal institution' not memorialized by written law." *Id.*

In this action, Plaintiff fails to allege the existence of a custom or policy, let alone that any policy or custom was the moving force behind his alleged constitutional injuries. *Cf. Rayford v. City of Toledo*, No. 86-3260, 1987 WL 36283, at *1 (6th Cir. Feb. 2, 1987); *see also Bilder v. City of Akron*, No. 92-4310, 1993 WL 394595, at *2 (6th Cir. Oct. 6, 1993) (affirming dismissal of § 1983 action when plaintiff allegation of policy or custom was conclusory, and plaintiff failed to allege facts tending to support the allegation). To the extent that Plaintiff suggests the existence of a custom regarding the conditions of confinement at ICJ, his allegations are wholly conclusory. To show that a governmental entity has an unlawful custom, a plaintiff must show the existence of "practices so persistent and widespread as to practically have the force of law." *Connick*, 563 U.S. at 61. Plaintiff's allegations do not show a widespread pattern. Further, to the extent that Plaintiff intended to suggest such a pattern, conclusory allegations of unconstitutional conduct without specific factual allegations fail to state a claim under § 1983. *See Iqbal*, 556 U.S. at 678; *Twombly*, 550 U.S. at 555 (2007).

Accordingly, because Plaintiff fails to allege the existence of a policy or custom, the Court will dismiss Plaintiff's official capacity claims against Defendants Wrigglesworth, Bouck, and Southworth.

## IV.    Individual Capacity Claims

### A.      Retaliation Claims

Retaliation based upon a prisoner's exercise of his or her constitutional rights violates the Constitution. *See Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999) (en banc). In order to

set forth a First Amendment retaliation claim, a plaintiff must establish three elements: (1) he was engaged in protected conduct; (2) an adverse action was taken against him that would deter a person of ordinary firmness from engaging in that conduct; and (3) the adverse action was motivated, at least in part, by the protected conduct. *Id.* Moreover, a plaintiff must be able to show that the exercise of the protected right was a substantial or motivating factor in the defendant's alleged retaliatory conduct. *See Smith v. Campbell*, 250 F.3d 1032, 1037 (6th Cir. 2001) (citing *Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977)). The Court construes Plaintiff's amended complaint to raise two retaliation claims: (i) a retaliation claim based on Plaintiff's escape from ICJ; and (ii) a retaliation claim based on Plaintiff's letter to the Lansing State Journal.

### 1. Retaliation Based on Plaintiff's Escape from ICJ

Plaintiff first claims that Defendants retaliated against him because he escaped from ICJ. (*See* Am. Compl., ECF No. 8, PageID.57, ¶ 28.) When setting forth his retaliation claim, Plaintiff claims that he engaged in "protected conduct," however, Plaintiff's escape from detention at ICJ is not protected conduct because, at a minimum, escaping from jail violates jail regulations and may itself constitute a crime. "[I]f a prisoner violates a legitimate prison regulation, he is not engaged in 'protected conduct.'" *Thaddeus-X*, 175 F.3d at 395. Therefore, Plaintiff merely alleges the ultimate fact of retaliation, but he fails to allege sufficient factual allegations to support his claim. *See Murphy v. Lane*, 833 F.2d 106, 108 (7th Cir. 1987). Accordingly, for these reasons, Plaintiff's First Amendment retaliation claims premised on his escape from ICJ will be dismissed.

### 2. Retaliation Based on Plaintiff's Letter to the Lansing State Journal

Plaintiff also claims that Defendants retaliated against him because Plaintiff sent a letter to the Lansing State Journal, which "reached the front page of the paper." (Am. Compl., ECF No. 1, PageID.56, ¶ 23.)

9

As to the first element of a retaliation claim, at this stage of the proceedings, the Court assumes, without deciding, that Plaintiff's letter to the Lansing State Journal constitutes protected activity. *Cf. Pell v. Procunier*, 417 U.S. 817, 822 (1974) (discussing that inmates "retain[] those First Amendment rights that are not inconsistent with [their] status as . . . prisoner[s] or with the legitimate penological objectives of the corrections system); *see also Bazzetta v. McGinnis*, 124 F.3d 774, 780 (6th Cir. 1997). Although Plaintiff's amended complaint does not indicate what information was in his letter to the Lansing State Journal, at this stage of the proceedings, there is nothing in the amended complaint to suggest that the contents of the letter, or the act of sending the letter, violated any ICJ rules. *See Spruytte v. Hoffner*, 181 F. Supp. 2d 736, 742 (W.D. Mich. 2001) (concluding that a prisoner engaged in protected conduct when he sent a letter to a newspaper, and the letter "did not violate a legitimate prison regulation" (citation omitted)).

Next, to establish the second element of a retaliation claim, a prisoner-plaintiff must show adverse action by a prison official sufficient to deter a person of ordinary firmness from exercising his constitutional rights. *Thaddeus-X*, 175 F.3d at 396. The adverseness inquiry is an objective one and does not depend on how a particular plaintiff reacted. The relevant question is whether the defendant's conduct is "*capable* of deterring a person of ordinary firmness"; the plaintiff need not show actual deterrence. *Bell v. Johnson*, 308 F.3d 594, 606 (6th Cir. 2002). Finally, to satisfy the third element of a retaliation claim, Plaintiff must allege facts that support an inference that the alleged adverse action was motivated by the protected conduct.

 Here, Plaintiff alleges that on February 17, 2021, "a non-party sergeant told Plaintiff that he was being held incommunicado for the letter Plaintiff wrote the Lansing State Journal and it had just reached the front page of the paper." (Am. Compl., ECF No. 8, PageID.56, ¶ 23.) Plaintiff also alleges that at an unspecified time, Defendant Jewell told Plaintiff that he had "given the

10

sheriff a black eye in the media and should have expected punches in return." (*Id.*) "Plaintiff believes that Defendant Jewell was referring to Plaintiff's treatment and incommunicado status." (*Id.*)

The Court assumes, without deciding, that Plaintiff "being held incommunicado" constitutes an adverse action. However, although Plaintiff alleges that a non-party sergeant told Plaintiff that he was being held incommunicado due to the letter that Plaintiff wrote to a newspaper, Plaintiff fails to allege sufficient facts to suggest that *any named Defendants* took adverse action against Plaintiff in retaliation for Plaintiff's letter.

Plaintiff alleges in a conclusory manner that at an unspecified time, Defendant Jewell told Plaintiff that he had "given the sheriff a black eye in the media and should have expected punches in return," however, Plaintiff fails to allege any *facts* about what Defendant Jewell was referring to. (*Id.*) Instead, Plaintiff states that he "*believes* that Defendant Jewell was referring to Plaintiff's treatment and incommunicado status," but Plaintiff fails to allege any facts to support his belief. (*Id.* (emphasis added).) And, Plaintiff does not allege any facts to suggest that Defendant Jewell had any involvement in Plaintiff's "incommunicado status." Furthermore, as to Defendant Jewell's statement that Plaintiff "should have expected punches in return," the Court concludes that this vague statement, on its own, would not deter a person of ordinary firmness from exercising his or her First Amendment rights. *See, e.g.*, *Hardy v. Adams*, No. 16-2055, 2018 WL 3559190, at *3 (6th Cir. Apr. 13, 2018) ("The alleged threat by Adams that she would make Hardy's life 'hell' is simply too vague to pass this threshold."); *Shisler v. Golladay*, No. 2:19-cv-80, 2019 WL 2590693, at *4 (W.D. Mich. June 25, 2019) (Golladay's threat that the ticket would be the least of the plaintiff's worries was "simply too vague" to support a First Amendment retaliation claim).

Moreover, Defendant Jewell's statement, on its own, is insufficient to show a motive for other individuals. Because Plaintiff fails to allege facts to show that Defendant Jewell had any involvement in Plaintiff being on "incommunicado status," Plaintiff's speculation about what Defendant Jewell may have been referring to, without supporting *facts*, is insufficient to show that those who were involved in Plaintiff's "incommunicado status" were motivated by Plaintiff's protected conduct.

The only named Defendant that Plaintiff identifies as having involvement in Plaintiff's placement on "incommunicado status" is Defendant Buckner; however, Plaintiff alleges that Defendant Buckner told Plaintiff he was on "incommunicado status" on February 1, 2021, which is prior to the date that Plaintiff indicates his letter to the Lansing State Journal was on the front page. (Am. Compl., ECF No. 8, PageID.56, ¶¶ 20, 23.) Therefore, with respect to Defendant Buckner, Plaintiff necessarily fails to show that Defendant Buckner was motivated by Plaintiff's letter to the Lansing State Journal because Defendant Buckner took the alleged adverse action against Plaintiff *before* Plaintiff's letter was on the front page of the newspaper, and Plaintiff fails to allege any facts to suggest that Defendant Buckner had any other knowledge of the letter prior to it being published in the newspaper.

As to the remaining Defendants, Plaintiff *fails to even suggest* that they took any adverse actions against Plaintiff because of Plaintiff's letter to the newspaper, let alone allege any facts to show that they did so. Instead, Plaintiff merely alleges the ultimate fact of retaliation in this action, but he fails to allege sufficient factual allegations to support his claim. *See Murphy*, 833 F.2d at 108 ("[A]lleging merely the ultimate fact of retaliation is insufficient."). However, "conclusory allegations of retaliatory motive 'unsupported by material facts'" do not state a claim under § 1983. *Harbin-Bey v. Rutter*, 420 F.3d 571, 580 (6th Cir. 2005) (citation omitted); *see Murray v. Unknown*

12

*Evert*, 84 F. App'x 553, 556 (6th Cir. 2003) (holding that in complaints screened pursuant to 28 U.S.C. § 1915A, "[c]onclusory allegations of retaliatory motive with no concrete and relevant particulars fail to raise a genuine issue of fact for trial" (internal quotation marks omitted)); *Lewis v. Jarvie*, 20 F. App'x 457, 459 (6th Cir. 2001) ("[B]are allegations of malice on the defendants' parts are not enough to establish retaliation claims [that will survive § 1915A screening]." (citing *Crawford-El v. Britton*, 523 U.S. 574, 588 (1998))).

For all of these reasons, Plaintiff fails to state a First Amendment retaliation claim premised on Plaintiff's letter to the Lansing State Journal.

### B.      Civil Conspiracy Claims Under § 1983

The Court construes Plaintiff's amended complaint to raise a civil conspiracy claim under § 1983. (*See* Am. Compl., ECF No. 8, PageID.57, ¶ 28 (stating that Defendants "verbally and physically conspired against Plaintiff for . . . escaping [from ICJ]").)

A civil conspiracy under § 1983 is "an agreement between two or more persons to injure another by unlawful action." *See Hensley v. Gassman*, 693 F.3d 681, 695 (6th Cir. 2012) (quoting *Hooks v. Hooks*, 771 F.2d 935, 943–44 (6th Cir. 1985)). The plaintiff must show the existence of a single plan, that the alleged coconspirator shared in the general conspiratorial objective to deprive the plaintiff of a federal right, and that an overt action committed in furtherance of the conspiracy caused an injury to the plaintiff. *Id.*; *Bazzi v. City of Dearborn*, 658 F.3d 598, 602 (6th Cir. 2011). Moreover, a plaintiff must plead a conspiracy with particularity, as vague and conclusory allegations unsupported by material facts are insufficient. *Twombly*, 550 U.S. at 565 (recognizing that allegations of conspiracy must be supported by allegations of fact that support a "plausible suggestion of conspiracy," not merely a "possible" one); *Fieger v. Cox*, 524 F.3d 770, 776 (6th Cir. 2008); *Spadafore v. Gardner*, 330 F.3d 849, 854 (6th Cir. 2003); *Gutierrez v. Lynch*, 826 F.2d 1534, 1538 (6th Cir. 1987).

Here, Plaintiff's allegations of conspiracy are wholly conclusory. Plaintiff alleges in a conclusory manner that Defendants Southworth and Buckner were "put in charge of a plan to enforce the . . . inhumane treatment by Defendant Wrigglesworth" and that the other Defendants "participated in enforcing" this plan; however, Plaintiff alleges no *facts* that indicate the existence of a plan, much less that any Defendant shared a conspiratorial objective. (Am. Compl., ECF No. 8, PageID.56, ¶ 17.) Plaintiff's allegations, even viewed in the light most favorable to Plaintiff, describe discrete occurrences involving Defendants. Plaintiff appears to rely entirely on a highly attenuated inference of a conspiracy from the mere fact that each Defendant took allegedly adverse actions or unpleasant actions against him within a short period of time.

As the United States Supreme Court has held, such allegations, while hinting at a sheer "possibility" of conspiracy, do not contain "enough factual matter (taken as true) to suggest that an agreement was made." *Twombly*, 550 U.S. at 556–57. Instead, the Supreme Court has recognized that although parallel conduct may be consistent with an unlawful agreement, it is insufficient to state a claim where that conduct "was not only compatible with, but indeed was more likely explained by, lawful, unchoreographed . . . behavior." *Iqbal*, 556 U.S. at 680 (citing *Twombly*, 550 U.S. at 567). Accordingly, because Plaintiff does not allege facts to show an agreement among Defendants, and, instead, alleges that on various occasions, Defendants allegedly took discrete actions against him, Plaintiff fails to state a plausible claim of conspiracy against Defendants.

## C.    Fourteenth Amendment Claims

Plaintiff alleges that Defendants violated his right to be free from cruel and unusual punishment under the Eighth Amendment. (Am. Compl., ECF No. 8, PageID.57–58.) However, it appears that Plaintiff was a pretrial detainee at the time of his detention in ICJ. *See* MDOC's

Offender Tracking Information System, https://mdocweb.state.mi.us/otis2/otis2profile.aspx?mdocNumber=632622 (last visited Mar. 20, 2024).

Until recently, the Sixth Circuit "analyzed Fourteenth Amendment pretrial detainee claims and Eighth Amendment prisoner claims 'under the same rubric.'" *Greene v. Crawford Cnty.*, 22 F.4th 593, 605 (6th Cir. 2022) (quoting *Brawner v. Scott Cnty.*, 14 F.4th 585, 591 (6th Cir. 2021)). However, in *Kingsley v. Hendrickson*, the United States Supreme Court differentiated the standard for excessive force claims brought by pretrial detainees under the Fourteenth Amendment's Due Process Clause from those brought by convicted prisoners under the Eighth Amendment. 576 U.S. 389, 392–93 (2015). *Kingsley* left unanswered the question of "whether an objective standard applies in other Fourteenth Amendment pretrial-detainment context[s]." *Brawner*, 14 F.4th at 592.

Subsequently, in *Brawner*, the Sixth Circuit modified the second prong of the deliberate indifference test applied to pretrial detainees to require only recklessness. *Id.* at 592, 596. At issue in *Brawner* was a pretrial detainee's claim for deliberate indifference to medical needs. The Sixth Circuit held that to demonstrate deliberate indifference, "[a] pretrial detainee must prove 'more than negligence but less than subjective intent—something akin to reckless disregard.'" *Id.* at 596–97 (quoting *Castro v. County of Los Angeles*, 833 F.3d 1060, 1071 (9th Cir. 2016) (en banc)); *see also Helphenstine v. Lewis Cnty., Ky.*, 60 F.4th 305, 316–17 (6th Cir. 2023) (affirming that *Kingsley*, as interpreted by *Brawner*, required courts to "lower the subjective component from actual knowledge to recklessness"). That is, a pretrial detainee must show that the defendant acted "deliberately (not accidentally), [and] also recklessly in the face of an unjustifiably high risk of harm that is either known or so obvious that it should be known." *Brawner*, 14 F.4th at 596 (citation and quotation marks omitted). Further, a pretrial detainee must still show that he faced a sufficiently serious risk to his health or safety to satisfy the objective prong. *Cf. Hyman v. Lewis*,

27 F.4th 1233, 1237 (6th Cir. 2022) (stating that "*Brawner* left the 'objectively serious medical need' prong untouched"); *Helling v. McKinney*, 509 U.S. 25, 35 (1993) (applying deliberate indifference standard to conditions of confinement claims).

### 1.    Defendant Wrigglesworth

With respect to Defendant Wrigglesworth, Plaintiff claims that when Plaintiff returned to ICJ on November 21, 2020, following Plaintiff's "recapture[] after escaping . . . [from ICJ]," Defendant Wrigglesworth "ordered" Plaintiff "to be held in an observation cell with nothing but a self deterrent gown." (Am. Compl., ECF No. 8, PageID.56, ¶ 15.) Plaintiff claims that he was not provided with "hygiene, a mattress or a blanket for several days." (*Id.* ¶ 16.) Further, Plaintiff claims that from "November 21, 2020, to April 4, 2021, Plaintiff was housed in a cell with no window and a 24/7 daytime illuminating light." (*Id.* ¶ 18.)

As an initial matter, Plaintiff only alleges that Defendant Wrigglesworth had personal involvement in Plaintiff's conditions of confinement on November 21, 2020. After this date, Plaintiff alleges in a conclusory manner that other subordinate Defendants "enforce[d] the . . . inhumane treatment by Defendant Wrigglesworth," however, Plaintiff does not allege facts to suggest that Defendant Wrigglesworth had any further personal involvement in, or even knowledge of, Plaintiff's detention. (*Id.* ¶ 17.)

With respect to Plaintiff's placement in an observation cell on November 21, 2020, "with nothing but a self deterrent gown on," Plaintiff does not specifically explain why he was placed in this cell. (*Id.* ¶ 15.) However, Plaintiff acknowledges that on that date, he returned to ICJ after being recaptured following his escape from ICJ. (*See id.*) Under the circumstances alleged by Plaintiff in his amended complaint, Plaintiff fails to show that his initial placement in the observation cell posed a serious risk to his health or safety. *Cf. Helling*, 509 U.S. at 35; *Hyman*, 27 F.4th at 1237. Indeed, besides stating that on November 21, 2020, he only had a "self deterrent

16

gown," Plaintiff does not provide any further factual allegations regarding the specific conditions of his confinement in the observation cell on November 21, 2020. Without additional facts about the conditions of his confinement on November 21, 2020—the only date on which Plaintiff's facts show that Defendant Wrigglesworth was personally involved in Plaintiff's confinement—Plaintiff fails to state a claim against Defendant Wrigglesworth regarding his personal involvement with Plaintiff's conditions of confinement.

With respect to Plaintiff's allegation that he was not provided with "hygiene, a mattress or a blanket for several days," and Plaintiff's allegation that he "was housed in a cell with no window and a 24/7 daytime illuminating light" from November 21, 2020, to April 4, 2021, Plaintiff does not tie these allegations to any named Defendant. (Am. Compl., ECF No. 8, PageID.56, ¶¶ 16, 18.) For this reason alone, Plaintiff's claims regarding these aspects of his conditions of confinement are subject to dismissal. Moreover, Plaintiff's vague reference, without supporting facts, to not having "hygiene" is insufficient to state a claim because Plaintiff does not explain what "hygiene" items he was not provided with. Furthermore, although Plaintiff states that he did not have a mattress or a blanket for several days, Plaintiff fails to allege any facts about what this meant for his confinement. That is, Plaintiff does not explain whether this meant he had to sleep on the floor or whether the cell had a cot or other place for sleeping. Additionally, as to the lack of a window in his cell and the "24/7" light, Plaintiff does not allege that confinement in this cell resulted in any harm to him. Although the standard differs because Plaintiff was a pretrial detainee, Plaintiff must still allege facts to show that his confinement posed a serious risk to his health or safety. Plaintiff has not done so here because he provides no explanation regarding why the conditions posed a risk to him. In short, Plaintiff appears to ask the Court to fabricate plausibility to his claims from mere ambiguity. But ambiguity does not support a claim.

Moreover, to the extent that Plaintiff seeks to hold Defendant Wrigglesworth liable for the actions of his subordinates, government officials, such as Defendant Wrigglesworth, may not be held liable for the unconstitutional conduct of their subordinates under a theory of respondeat superior or vicarious liability. *Iqbal*, 556 U.S. at 676; *Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. 658, 691(1978); *Everson v. Leis*, 556 F.3d 484, 495 (6th Cir. 2009). A claimed constitutional violation must be based upon active unconstitutional behavior. *Grinter v. Knight*, 532 F.3d 567, 575–76 (6th Cir. 2008); *Greene v. Barber*, 310 F.3d 889, 899 (6th Cir. 2002). The acts of one's subordinates are not enough, nor can supervisory liability be based upon the mere failure to act. *Grinter*, 532 F.3d at 576; *Greene*, 310 F.3d at 899; *Summers v. Leis*, 368 F.3d 881, 888 (6th Cir. 2004).

The Sixth Circuit repeatedly has summarized the minimum required to constitute active conduct by a supervisory official:

> "[A] supervisory official's failure to supervise, control or train the offending individual is not actionable *unless* the supervisor either encouraged the specific incident of misconduct or in some other way directly participated in it." *Shehee*, 199 F.3d at 300 (emphasis added) (internal quotation marks omitted). We have interpreted this standard to mean that "at a minimum," the plaintiff must show that the defendant "at least implicitly authorized, approved, or knowingly acquiesced in the unconstitutional conduct of the offending officers."

*Peatross v. City of Memphis*, 818 F.3d 233, 242 (6th Cir. 2016) (quoting *Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999)); *see also Copeland v. Machulis*, 57 F.3d 476, 481 (6th Cir. 1995)); *Walton v. City of Southfield*, 995 F.2d 1331, 1340 (6th Cir. 1993).

Here, Plaintiff fails to allege any *facts* showing that Defendant Wrigglesworth encouraged or condoned the conduct of his subordinates, or authorized, approved, or knowingly acquiesced in the conduct. Plaintiff's vague and conclusory allegations of supervisory responsibility are insufficient to show that Defendant Wrigglesworth was personally involved in the alleged violations of Plaintiff's constitutional rights. Because Plaintiff has failed to allege that Defendant

Wrigglesworth engaged in any active unconstitutional behavior, Plaintiff fails to state a claim against him.

Accordingly, for the reasons set forth above, Plaintiff fails to state a Fourteenth Amendment conditions of confinement claim against Defendant Wrigglesworth.

### 2.     Defendants Southworth and Buckner

As to Defendants Southworth and Buckner, Plaintiff first claims that Defendants Southworth and Buckner were "put in charge of a plan to enforce the . . . inhumane treatment." (Am. Compl., ECF No. 8, PageID.56, ¶ 17.) Plaintiff also alleges that during recreation, he had to "wear full body restraints," and that this was Defendants Southworth and Buckner's "plan." (*Id.* ¶ 19.) Although Plaintiff alleges in a conclusory manner that this alleged wrongdoing occurred because of a "plan" by Defendants Southworth and Buckner, Plaintiff fails to allege *facts* showing that Defendants Southworth and Buckner were personally involved in the alleged violations of Plaintiff's rights. The Sixth Circuit "has consistently held that damage claims against government officials arising from alleged violations of constitutional rights must allege, with particularity, facts that demonstrate what each defendant did to violate the asserted constitutional right." *Boxill v. O'Grady*, 935 F.3d 510, 518 (6th Cir. 2019) (quoting *Lanman v. Hinson*, 529 F.3d 673, 684 (6th Cir. 2008)). Plaintiff has not done so here. Therefore, any conditions of confinement claims premised on Plaintiff's allegation that wrongdoing by others occurred due to Defendants Southworth and Buckner's "plan" will be dismissed.

Plaintiff next claims that on February 2, 2021, he was placed in a restraint chair by Defendant Southworth. (Am. Compl., ECF No. 8, PageID.56, ¶ 21.) Plaintiff does not allege that Defendant Southworth had any involvement in Plaintiff's continued detention in the restraint chair; instead, Plaintiff only alleges that Defendant Southworth was involved in Plaintiff's initial placement. Plaintiff also does not allege any facts about the circumstances leading to his placement

in the restraint chair. Based on the facts alleged by Plaintiff in his amended complaint, Plaintiff has failed to show that Defendant Southworth violated Plaintiff's rights with respect to Plaintiff's initial placement in the restraint chair.

Additionally, Plaintiff claims that "he was forced to live in an extremely bright cell or a pitch black one," and "Defendant Southworth told Plaintiff that it would teach Plaintiff a lesson." (*Id.*, PageID.57, ¶ 26.) As an initial matter, although Plaintiff attributes this statement to Defendant Southworth, Plaintiff does not allege that Defendant Southworth was involved in determining whether Plaintiff's cell was "extremely bright" or "pitch black." Indeed, with respect to Plaintiff's cell being pitch black, the facts alleged in Plaintiff's amended complaint show that Plaintiff's cell was dark because Plaintiff himself had broken his cell's light. (*See id.* (stating that "Plaintiff was held in a pitch black cell 24/7 in response to breaking the light").) Without facts alleged showing that Defendant Southworth was involved in determining the light in Plaintiff's cell, Plaintiff fails to state a claim against Defendant Southworth. *See, e.g.*, *Iqbal*, 556 U.S. at 676.

Finally, Plaintiff claims that "Defendant Buckner told Plaintiff they were withholding the vaccine as an incentive for Plaintiff to plead guilty to his charges and make himself available for transfer." (Am. Compl., ECF No. 8, PageID.57, ¶ 27.) Plaintiff also claims that "Defendant Buckner told Plaintiff that he would receive better treatment when he got to prison and he needed to give up on his defense." (*Id.*) As an initial matter, with respect to Plaintiff's allegation regarding the COVID-19 vaccine, Plaintiff fails to allege facts showing that the vaccine was available at the time in question or that there was COVID-19 in the jail at that time. Furthermore, although Plaintiff attributes this statement to Defendant Buckner, Plaintiff fails to allege facts showing that Defendant Buckner, a sergeant at ICJ and not a medical provider, had any involvement in whether Plaintiff or any other inmates received the COVID-19 vaccine. Additionally, as to the vague

statement that Plaintiff attributes to Defendant Buckner regarding alleged "better treatment" in prison, Plaintiff fails to allege any facts about what Buckner was referring to and this statement on its own, while unprofessional, does not show any action by Buckner that violated Plaintiff's constitutional rights.

Accordingly, for the reasons set forth above, Plaintiff fails to state a Fourteenth Amendment conditions of confinement claim against Defendants Southworth and Buckner.

### 3.  Defendant Bouck

As to Defendant Bouck, Plaintiff states that on February 26, 2021, Plaintiff "pleaded" with Defendants Bouck and Jewell "for help while being placed in a restraint suit," and then the restraint suit "was immediately removed." (*Id.*, PageID.56, ¶ 25.) Plaintiff presents no other factual allegations against Defendant Bouck.

It is clear that Plaintiff does not believe that he should have been placed in the "restraint chair" in the first place (*see id.*, PageID.58, ¶ 35); however, Plaintiff's own factual allegations show that after Plaintiff complained about the "restraint suit," the restraint suit "was immediately removed." (*Id.*, PageID.56, ¶ 25.) Under these circumstances, the facts alleged by Plaintiff do not suggest that Defendant Bouck violated Plaintiff's Fourteenth Amendment rights because Bouck was responsive to Plaintiff's concerns regarding the "restraint suit." Indeed, the Court fails to discern how Defendants Bouck and Jewell "immediately" removing Plaintiff from the "restraint suit," the very action that Plaintiff apparently wanted, could have violated Plaintiff's constitutional rights. Accordingly, Plaintiff's conditions of confinement claims against Defendant Bouck will be dismissed.

**4.      Conclusory Allegations Regarding Conditions of Confinement Against Defendants Earle, Brown, Jewell, Gaytan, Greer, Cantine, Reid, Watts, Klish, Kiger, Powell, Douse, Vanells, Druery, and Rosenberg**

As to the above-listed Defendants, Plaintiff first alleges in a conclusory manner that Defendants Brown, Jewell, Greer, Gaytan, Cantine, Vanells, Watts, Reid, Klish, Kiger, and Powell "willfully participated in enforcing" Defendants Southworth and Buckner's "plan to enforce the . . . inhumane treatment by Defendant Wrigglesworth." (*Id.* ¶ 17.)[4] Plaintiff next alleges that he "did not have regular access to drinking water" from February 5, 2021, to February 26, 2021. (*Id.* ¶ 24.) Without providing any specific dates, times, or further explanation, Plaintiff alleges in a conclusory manner that Defendants Reid, Watts, Cantine, Rosenberg, Klish, Douse, and Greer "were the deputies who withheld water." (*Id.* ¶ 25.) Plaintiff also claims that "[d]uring this period of time, Defendant Reid withheld food from Plaintiff three times and Defendant Watts withheld food once." (*Id.*) Finally, as to Defendant Druery, Plaintiff fails to name Druery in his factual allegations; Plaintiff only mentions Druery's name when setting forth his legal claims. (*See id.*, PageID.55–58.)

It is a basic pleading essential that a plaintiff attribute factual allegations to particular defendants. *See Twombly*, 550 U.S. at 555–61 (holding that, in order to state a claim, a plaintiff must make sufficient allegations to give a defendant fair notice of the claim). Additionally, any "[s]ummary reference to a single, five-headed 'Defendants' [or staff] does not support a reasonable inference that each Defendant is liable . . . ." *Boxill*, 935 F.3d at 518 (6th Cir. 2019) (citation omitted).

---

[4] Plaintiff does not name Defendants Earle, Dreury, and Rosenberg in this paragraph. (*See* Am. Compl., ECF No. 8, PageID.56, ¶ 17.)

In this action, Plaintiff fails to present any *facts* against Defendant Druery; instead, Plaintiff only presents conclusory claims against Druery without any supporting facts. Further, although Plaintiff lists the names of Defendants Earle, Brown, Jewell, Gaytan, Greer, Cantine, Watts, Reid, Klish, Kiger, Powell, Douse, Vanells, and Rosenberg in the body of his complaint, Plaintiff fails to allege *facts* showing how each Defendant was personally involved in the alleged violations of Plaintiff's constitutional rights as related to his general conditions of confinement. Instead, Plaintiff presents conclusory allegations of alleged wrongdoing with no specific dates and suggests that in some unspecified and unexplained way, all of the above-listed Defendants were involved. To state a claim upon which relief may be granted, "a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Iqbal*, 556 U.S. at 676. With respect to Defendants Earle, Brown, Jewell, Gaytan, Greer, Cantine, Reid, Watts, Reid, Klish, Kiger, Powell, Douse, Vanells, Druery, and Rosenberg, Plaintiff's allegations regarding his conditions of confinement do not satisfy this pleading standard. *See Boxill*, 935 F.3d at 518; *Frazier v. Michigan*, 41 F. App'x 762, 764 (6th Cir. 2002) (dismissing plaintiff's claims where the complaint did not allege with any degree of specificity which of the named defendants were personally involved in or responsible for each alleged violation of rights).

Specifically, as to Plaintiff's allegation that Defendants Brown, Jewell, Greer, Gaytan, Cantine, Vanells, Watts, Reid, Klish, Kiger, and Powell "willfully participated in enforcing" Defendants Southworth and Buckner's "plan to enforce the . . . inhumane treatment by Defendant Wrigglesworth," Plaintiff fails to provide any further explanation about this conclusory assertion, such as when Defendants acted and how they were each involved. (Am. Compl., ECF No. 8, PageID.56, ¶ 17.) Further, with respect to Plaintiff's allegation that he "did not have regular access to drinking water" from February 5, 2021, to February 26, 2021, (*id.* ¶ 24), the Court notes that

Plaintiff does not allege that he had *no* drinking water; he simply alleges that he did not have "regular access" to it. Without additional supporting facts or explanation, Plaintiff fails to allege sufficient facts to suggest that the conditions of his confinement during this period of time amounted to punishment and violated his due process rights. Moreover, as to the actions of Defendants Reid, Watts, Cantine, Rosenberg, Klish, Douse, and Greer, Plaintiff alleges in a conclusory manner that these Defendants "were the deputies who withheld water" (*id.* ¶ 25); however, Plaintiff again fails to provide supporting facts to show *how* they were each involved. *See Grinter*, 532 F.3d at 575–76 (discussing that a claimed constitutional violation must be based upon active unconstitutional behavior); *Greene*, 310 F.3d at 899.

Finally, Plaintiff alleges that "[d]uring this period of time," presumably from February 5, 2021, to February 26, 2021, "Defendant Reid withheld food from Plaintiff three times and Defendant Watts withheld food once." (Am. Compl., ECF No. 8, PageID.56, ¶ 25.) As discussed above, to state a conditions of confinement claim, Plaintiff must show that he was subjected to a substantial risk of serious harm. The Court does not minimize Plaintiff's experience; however, "[d]enying a few meals over an extended period will generally not suffice to state a viable claim." *Assi v. Hanshaw*, 625 F. Supp. 3d 722, 746 (S.D. Ohio 2022) (addressing, among other things, a pretrial detainee's conditions of confinement claims). "'[T]he withholding of meals, while it may result in some discomfort,' does not amount to a constitutional violation when the inmate 'continues to receive adequate nutrition.'" *Id.* (quoting *Richmond v. Settles*, 450 F. App'x 448, 456 (6th Cir. 2011)); *see Cunningham v. Jones*, 667 F.2d 565, 566 (6th Cir. 1982) (per curiam) (providing a prisoner only one meal per day for fifteen days did not satisfy the objective prong because the meals provided contained sufficient nutrition to sustain normal health). Here, Plaintiff does not allege facts to show that he was provided with inadequate nutrition during the relevant

24

period of time. Plaintiff's allegation that he missed four meals in a sixteen-day period falls short of stating a claim under the objective prong. Consequently, Plaintiff does not state a plausible claim regarding the missed meals. *See Iqbal*, 556 U.S. at 679 (noting that the allegations must permit an inference of more than a "mere possibility" of misconduct).

Accordingly, for all of these reasons, Plaintiff fails to state a conditions of confinement claim against Defendants Earle, Brown, Jewell, Gaytan, Greer, Cantine, Reid, Watts, Klish, Kiger, Powell, Douse, Vanells, Druery, and Rosenberg regarding their participation in enforcing "a plan" of "inhumane treatment," the withholding of "regular access" to water, and the withholding of four meals.

### 5.  Defendant Reid

In addition to the above-discussed conclusory allegations against Defendant Reid, Plaintiff alleges that on February 2, 2021, he was placed in a restraint chair, and Defendant Reid performed the "first circulation check." (Am. Compl., ECF No. 8, PageID.56, ¶ 21.) Plaintiff claims that Defendant Reid tightened the straps on Plaintiff's wrists, stating: "I hope you're more comfortable." (*Id.*) Defendant Reid then "refused to contact command or loosen the straps despite [the fact that] Plaintiff's hand[s] had begun to turn bluish purple as he lost all feeling in them." (*Id.*) Plaintiff remained in this position for "more than three hours," and he "begged Defendant Reid to contact command," but Reid did not do so until "Plaintiff spit on Defendant Reid." (*Id.*)

At this stage of the proceedings, the Court must take Plaintiff's factual allegations as true. Taking Plaintiff's factual allegations as true and in the light most favorable to him, the Court will not dismiss Plaintiff's Fourteenth Amendment claim against Defendant Reid regarding Reid's involvement with Plaintiff's confinement in a restraint chair on February 2, 2021. *See, e.g.*, *Assi*, 625 F. Supp. 3d at 743–45 (declining to dismiss, on initial review, a pretrial detainee's excessive force claim premised on the detainee's confinement in a restraint chair for several hours, and

explaining that to state a "failure to intervene claim" regarding continued confinement in the restraint chair, a detainee must show that an officer "knew or would have had reason to know" that the detainee's "confinement in the restraint chair constituted *excessive* force" (emphasis in original)).

### D.      Claims Regarding Right to Communicate with the Outside World, Right to File Grievances, Right to Counsel, and Right to Access the Courts

Plaintiff alleges that "[o]n February 1, 2021, Defendant Buckner told Plaintiff that his right to communicate with the outside world was being stripped." (Am. Compl., ECF No. 8, PageID.56, ¶ 20.) Plaintiff also alleges that he was "unable to write kites or grievances." (*Id.* ¶ 23.) Further, Plaintiff alleges that on February 5, 2021, "a visit was scheduled by the Ingham County Sheriff between Plaintiff and his Ingham County Public Defenders," however, "[t]he visit was denied." (*Id.*) Additionally, when setting forth his claims, Plaintiff's alleges that by "denying Plaintiff's Public Defender's scheduled visit without provocation," Defendants Wrigglesworth, Bouck, and Southworth denied him "access to the courts and [an] attorney." (*Id.*, PageID.58, ¶ 40.)

Plaintiff's allegations regarding his "right to communicate with the outside world" implicate Plaintiff's First Amendment right to free speech. However, besides Plaintiff's conclusory allegation, Plaintiff fails to explain *how* his "right to communicate with the outside world was . . . stripped." (*Id.*, PageID.56, ¶ 20.) A prisoner retains only those First Amendment freedoms which are "not inconsistent with his status as a prisoner or with legitimate penological objectives of the corrections systems." *Martin v. Kelley,* 803 F.2d 236, 240 n.7 (6th Cir. 1986) (*quoting Pell*, 417 U.S. at 822); *see Turner v. Safley,* 482 U.S. 78 (1987). For example, "[a] prisoner's right to receive mail is protected by the First Amendment." *Knop v. Johnson*, 977 F.2d 996, 1012 (6th Cir. 1992) (citing *Pell*, 417 U.S. at 822). Here, Plaintiff's vague and conclusory assertion that he was "held incommunicado" and that his "right to communicate with the outside world was . . . stripped,"

26

without supporting facts, fails to state a claim against any of the named Defendants. *See Iqbal*, 556 U.S. at 678–79; *Twombly*, 550 U.S. at 555. Additionally, as to Plaintiff's allegation that he was "unable to write kites or grievances," the courts repeatedly have held that there exists no constitutionally protected due process right to an effective prison grievance procedure. *See, e.g.*, *Hewitt v. Helms*, 459 U.S. 460, 467 (1983); *Walker v. Mich. Dep't of Corr.*, 128 F. App'x 441, 445 (6th Cir. 2005); *Adams v. Rice*, 40 F.3d 72, 75 (4th Cir. 1994) (collecting cases). And, Michigan law does not create a liberty interest in the grievance procedure.[5] *See Olim v. Wakinekona*, 461 U.S. 238, 249 (1983); *Keenan v. Marker*, 23 F. App'x 405, 407 (6th Cir. 2001); *Wynn v. Wolf*, No. 93-2411, 1994 WL 105907, at *1 (6th Cir. Mar. 28, 1994).

Further, related to Plaintiff's claims regarding access to the outside world, Plaintiff alleges that on one occasion, a scheduled visit with the Ingham County Public Defender's Office was

---

[5] To the extent that Plaintiff intended to allege that Defendants violated his right to petition the government, this right is not violated by Defendants' failure to process or act on his grievances. The First Amendment "right to petition the government does not guarantee a response to the petition or the right to compel government officials to act on or adopt a citizen's views." *Apple v. Glenn*, 183 F.3d 477, 479 (6th Cir. 1999); *see also Minn. State Bd. for Cmty. Colls. v. Knight*, 465 U.S. 271, 285 (1984) (holding the right to petition protects only the right to address government; the government may refuse to listen or respond). Moreover, Defendants' actions have not barred Plaintiff from seeking a remedy for his grievances. *See Cruz v. Beto*, 405 U.S. 319, 321 (1972). "A prisoner's constitutional right to assert grievances typically is not violated when prison officials prohibit only 'one of several ways in which inmates may voice their complaints to, and seek relief, from prison officials' while leaving a formal grievance procedure intact." *Griffin v. Berghuis*, 563 F. App'x 411, 415–16 (6th Cir. 2014) (citing *Jones v. N.C. Prisoners' Labor Union, Inc.*, 433 U.S. 119, 130 n.6 (1977)). Indeed, Plaintiff's ability to seek redress is underscored by his *pro se* invocation of the judicial process. *See Azeez v. DeRobertis*, 568 F. Supp. 8, 10 (N.D. Ill. 1982). Even if Plaintiff had been improperly prevented from filing a grievance, his right of access to the courts to petition for redress of his grievances (i.e., by filing a lawsuit) cannot be compromised by his inability to file institutional grievances, and he therefore cannot demonstrate the actual injury required for an access-to-the-courts claim. *See, e.g.*, *Lewis v. Casey*, 518 U.S. 343, 355 (1996) (requiring actual injury); *Bounds v. Smith*, 430 U.S. 817, 821–24 (1977); *cf. Ross v. Blake*, 578 U.S. 632, 640–44 (2016) (reiterating that, if the prisoner is barred from pursuing a remedy by policy or by the interference of officials, the grievance process is not available, and exhaustion is not required). In light of the foregoing, the Court finds that Plaintiff fails to state a cognizable First Amendment claim.

"denied." (Am. Compl., ECF No. 8, PageID.56, ¶ 23.) It is clearly established that inmates have a constitutionally protected right of access to the courts under the First and Fourteenth Amendments. *See Lewis v. Casey*, 518 U.S. 343, 354 (1996); *Bounds v. Smith*, 430 U.S. 817, 821 (1977); *Wolff v. McDonnell*, 418 U.S. 539, 556 (1974). "Contact attorney visitation has been recognized as falling within this right of meaningful access." *Johnson v. Cnty. of Wayne*, No. 08-cv-10209, 2008 WL 4279359, at *4 (E.D. Mich. Sept. 16, 2008) (citing *Casey v. Lewis*, 4 F.3d 1516, 1520 (9th Cir. 1993)).

In order to state a viable claim for interference with his access to the courts, a plaintiff must show actual injury to pending or contemplated litigation. *See Lewis*, 518 U.S. at 349; *Dellis v. Corr. Corp. of Am.*, 257 F.3d 508, 511 (6th Cir. 2001); *Talley-Bey v. Knebl*, 168 F.3d 884, 886 (6th Cir. 1999). The Supreme Court squarely has held that "the underlying cause of action . . . is an element that must be described in the complaint, just as much as allegations must describe the official acts frustrating the litigation." *Christopher v. Harbury*, 536 U.S. 403, 415 (2002) (citing *Lewis*, 518 U.S. at 353 & n.3). Here, Plaintiff alleges that on one occasion, a scheduled visit with the Ingham County Public Defender's Office was "denied." (Am. Compl., ECF No. 8, PageID.56, ¶ 23.) Plaintiff also alleges that he was being "held incommunicado" for a period of time, however, besides this conclusory assertion, he alleges no further facts about what this entailed. Under these circumstances, Plaintiff fails to allege any facts to suggest that this one-time denial of a visit with the Public Defender's Office resulted in any injury. Moreover, Plaintiff fails to allege any facts that this one-time denial of a visit denied him his right to counsel under the Sixth Amendment.

Accordingly, for all the reasons set forth above, any intended claims regarding Plaintiff's right to communicate with the outside world, right to file grievances, right to counsel, and right to access the courts will be dismissed.

**E.     Claim Regarding Defendants Inserting Themselves Into Plaintiff's Criminal Case**

Finally, Plaintiff alleges that "those [D]efendants employed by the Ingham County Sheriff's Office improperly asserted itself [sic] in his pending criminal cases." (Am. Compl., ECF No. 8, PageID.57, ¶ 28.) Plaintiff fails to provide any further explanation or supporting facts about this allegation. Without supporting facts explaining how Defendants "asserted" themselves into Plaintiff's criminal case, the Court is unable to discern any § 1983 claim that would arise from this allegation. Instead, Plaintiff appears to ask the Court to fabricate plausibility to his claims from mere ambiguity; however, ambiguity does not support a claim.[6] Accordingly, Plaintiff § 1983 claim regarding Defendants inserting themselves into Plaintiff's criminal case will be dismissed.

<u>Conclusion</u>

Having conducted the review required by the PLRA, the Court determines that Defendants Wrigglesworth, Bouck, Southworth, Earle, Jewell, Brown, Buckner, Gaytan, Watts, Cantine, Druery, Rosenberry, Greer, Vanells, Douse, Powell, Klish, and Kiger will be dismissed for failure to state a claim under 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c). The Court will also dismiss, for failure to state a claim, all of Plaintiff's claims against remaining Defendant Reid *except* for Plaintiff's Fourteenth Amendment claim regarding Reid's involvement with Plaintiff's confinement in a restraint chair on February 2, 2021. Plaintiff's Fourteenth Amendment claim against Defendant Reid regarding Reid's involvement with Plaintiff's confinement in a

---

[6] The Court notes that, as Plaintiff states in his complaint, he escaped from ICJ. (*See* Am. Compl., ECF No. 8, PageID.56.) After his escape and recapture, in addition to the criminal charges for which Plaintiff was initially detained at ICJ, Plaintiff then faced criminal charges related to his escape from ICJ. *See* MDOC's Offender Tracking Information System, https://mdocweb.state.mi.us/otis2/otis2profile.aspx?mdocNumber=632622 (last visited Mar. 20, 2024). Under these circumstances, it seems likely that the Ingham County Sheriff's Office and Defendants may have had some involvement in Plaintiff's criminal cases.

restraint chair on February 2, 2021, remains in the case. The Court will serve the amended complaint against Defendant Reid.

      An order consistent with this opinion will be entered.


Dated: <u>March 21, 2024</u>                     <u>/s/ Hala Y. Jarbou</u>
                                                    HALA Y. JARBOU
                                                    CHIEF UNITED STATES DISTRICT JUDGE